OLD COLONY ZINC & SMELTING CO. v. CARRICK et al.

(Circuit Court of Appeals, Eighth Circuit.    April 3, 1907.)

No. 2,433.

VENDOR AND PURCHASER—RESCISSION OF SALE—FRAUD—TIME.

Complainant, having purchased a lead and zinc mine in July, 1902, discovered in April, 1903, that its agent had been corrupted by the vendors, and that complainant had been induced to pay $7,000 more for the mine than the owners deemed it worth. With this knowledge, complainant brought suit to recover the amount alleged to have been wrongfully paid to its agent and made a claim against the vendors for the overpayment, but no notice of rescission for fraud was given to the vendors until August, 1904, and suit was not brought for such relief until September of that year, during which time complainant treated the mine as its own and operated the same changing the status of the parties and condition of the property in such a manner as to disclose a purpose to waive the fraud and affirm the sale. *Held*, that complainant was not entitled to a decree for rescission.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 213.]

Appeal from the Circuit Court of the United States for the Southwestern Division of the District of Missouri.

George Hubbert and C. V. Buckley, for appellant.

Thomas Dolan, for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a suit in equity to set aside a deed and rescind the sale of a lead and zinc mine for fraudulent misrepresentations by the vendors touching the value of the mine and for alleged corruption by them of the agent of the vendee who was deputed to examine and report on its value. We need not stop to consider whether any such representations were made, and, if made, whether they were of the character which entitled the vendee to equitable relief, or whether the agent of the vendee was improperly approached and influenced by the vendors. The facts of the case clearly show that the appellant, who was complainant below, conducted mining operations, speculated on the chances of finding valuable mineral, and postponed beginning its action to rescind the sale so long after the discovery of the alleged wrongdoing by defendants that it now has no standing in a court of equity to obtain the relief sought by the bill. The mine was purchased on July 28, 1902. From that time until August, 1905, when the president of complainant company gave his testimony, the mine was continuously operated by the vendee, and, so far as this record discloses, is now being so operated. He testified that he found just enough encouragement to cause him to keep on mining; that he continued prospecting, drilling, and drifting, and occasionally struck fairly good bodies of ore. He admitted that he learned in April, 1903, that the company's agent had been corrupted, having received from defendants the sum of $2,000 for exerting his influence in bringing about a sale to complainant, his principal; that he then learned that his company had paid $7,000 more for the mine than the owners deemed it worth. He caused suit to be instituted against the agent to recover the $2,000 wrongfully paid him, and asserted a claim for and considered the advisability of instituting suit against the vendors to recover $7,000, which he denounced as their "graft." With all this knowledge he neither stopped work nor took any steps to rescind the sale for sixteen or seventeen months thereafter. In June, 1903, he wrote his attorney, Mr. Gray, as follows:

"If you and Mr. Buckley should judge that we are entitled at this late day to repudiate the sale, demand our money back, you will please advise us whether or not we should take a vote of our directors to that effect and give the defendant notice of it. Will the fact that we have continued to operate and develop the property for a month or two since we gained knowledge of the fraud estop us from rescinding the sale?"

And then, doubtless with a view of not committing himself irretrievably to follow his attorney's advice, he said:

"Possibly our board may not think best to rescind if we can, but it seems to me to make that attack with others, and later make choice for main reliance may be good tactics because it would be most likely to bring out a liberal offer of settlement."

With knowledge in April, 1903, of all the alleged fraud, plainly and unambiguously acknowledged by the president of the company in his letter of June, 1903, no notice of rescission was given to the defendants

until August, 1904, and this suit was not instituted until September, 1904, 17 months after adequate knowledge was acquired. Instead of asserting the right to rescind promptly upon discovering the fraud as required by a rule of equity universally recognized, the complainant waited 16 months before giving the notice of rescission or taking any steps in that direction. During this period it treated the mine as its own, conducted the usual operations, mined and sold ore, changed the status of the parties and the condition of the property, and in every way disclosed a purpose to waive the fraud and affirm the contract, notwithstanding the fraud. It asserted a claim against its unfaithful agent for $2,000 received by him from the defendants for his perfidy, and asserted a claim of $7,000 against the defendants, which it considered to be the amount paid for the mine over and above its value. Its conduct was consistent with the affirmation of the contract, notwithstanding the fraud and the recovery of damages occasioned by the fraud, and was totally inconsistent with the intention to disaffirm and rescind the contract by reason of the fraud.

Even the institution of this suit does not seem to have been the result of a definite purpose to exercise the right of rescission. It appears rather to have been resorted to for the purpose of enforcing a settlement of its claims just mentioned. In the language of the president this suit was "good tactics, * * * most likely to bring out a liberal offer of settlement."

It is difficult to seriously discuss the right of a suitor to resort to a court of equity for relief on the facts and circumstances disclosed by this record. The case falls fully within the recent case of Richardson v. Lowe (C. C. A.) 149 Fed. 625, decided by us and the cases therein cited, and is governed by the rules and principles therein announced.

The Circuit Court properly dismissed the bill, and its decree is accordingly affirmed.